IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARGARET WILSON, as Guardian and next friend to J.W., a minor child, ) ) ) Plaintiff, ) ) v. ) ) BILLY GENE DOSS, *et al.*, ) ) Defendants. ) | CIVIL ACTION NO. 2:09cv21-MEF (WO) |

## MEMORANDUM OPINION AND ORDER

On December 8, 2008, the plaintiff, as next friend and guardian to J.W., a minor child, filed a lawsuit in the Circuit Court of Montgomery County, Alabama against the defendants alleging state and federal law claims related to defendant Doss' unlawful sexual conduct with J.W. The plaintiff names as defendants Billy Gene Doss ("Doss"), the City of Montgomery, Art Baylor, William E. Herman, and Jerry McQueen.[1] The plaintiff asserts that, while employed by the City of Montgomery as a police officer and assigned as a School Bureau Officer, Doss subjected J.W. to unlawful sexual contact. The plaintiff's complaint contains five state law claims and one federal law claim. The five state law claims are as follows: assault and battery (count I), negligence/wantonness/willfulness (count II), intentional infliction of emotional and mental distress (count III), negligent infliction of emotional and mental distress (count IV), and "negligent unskillfully (sic) and/or careless conduct" in

---

[1] Baylor is the Chief of Police of the City of Montgomery; Herman and McQueen are employed by the City of Montgomery Police Department and were Doss' supervisors. For ease of reference, the court will refer to the City of Montgomery, Art Baylor, William E. Herman and Jerry McQueen collectively as "the City defendants".

violation of Ala. Code § 11-47-190 (count V). The federal law claim, premised on 42 U.S.C. § 1983, alleges that the City defendants were deliberately indifferent to J.W.'s constitutional rights by failing to protect him from Doss, and failing to transfer Doss to a position in which he had no access to minors. As a result of Doss' conduct, the plaintiff alleges that J.W. has suffered "permanent injuries and required the minor child to participate in counseling with mental health professionals." (Pl's Compl. at ¶ 17). In Count II, the plaintiff alleges that the City defendants were negligent in their hiring, training and supervision of Doss. (*Id.* at ¶ 25). In Count III, the plaintiff alleges intentional infliction of emotional and mental distress as a result of Doss' contact with J.W. (*Id.* at ¶¶ 27-28). Count IV alleges negligent infliction of emotional and mental distress as a result of Doss' contact. (*Id.* at ¶¶ 29-30). In addition, the plaintiff alleges that J.W. "has suffered physical, mental and emotional abuse and was sexually assaulted. Such actions caused the minor child to receive permanent injuries and required the minor child to participate in counseling with mental health professionals." (*Id.* at ¶ 17). Throughout the complaint, the plaintiff alleges that J.W. suffered "severe emotional distress," and permanent injury as a result of the defendants' conduct. She seeks compensatory and punitive damages.

      The defendants removed the case to this court on January 7, 2009. On August 14, 2009, the court denied the plaintiff's motion to remand. (Doc. # 19). Now pending before the court is the plaintiff's motion to quash a non-party subpoena, or in the alternative, motion for a protective order (doc. # 25). On February 4, 2010, the defendants served notices of intent to serve subpoenas on non-parties, Child Protect, Standing Together Against Rape

(STAR), Dr. John M. Moody, Dr. Mont Frederick Highley, Alabama Psychiatric Services and Jackson Hospital. The defendants seek the production of J.W.'s psychotherapy treatment records.

The plaintiff seeks to quash the subpoenas asserting that J.W.'s psychotherapy treatment records are absolutely privileged under FED. R. EVID. 501 and under Alabama law. In opposition to the motion to quash, the defendants argue that J.W. has waived the privilege by claiming damages for mental anguish and emotional distress. For the reasons that follow, the court concludes that the motion to quash is due to be DENIED, and the motion for a protective order be and is due to be GRANTED.

## DISCUSSION

The issue before the court is whether J.W.'s treatment records from psychotherapists and social workers are subject to discovery by the defendants. Assertions of privilege in federal question cases are governed by federal law. *See* FED. R. EVID. 501. "However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law." *Id*. Because this case raises both federal and state law claims, federal privilege law applies. "[T]he federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege." *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992).

Federal law clearly recognizes a psychotherapist/patient privilege. *See Jaffee v. Redmond*, 518 U.S. 1 (1996). Except for waiver, the psychotherapist privilege recognized in *Jaffee* is absolute in the sense that it is not subject to some balancing test. *Jaffee*, 518 U.S. at 17-18 (holding that applying a balancing test creates uncertainty that undermines the privilege.). "[C]onfidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee*, 518 U.S. at 15. It is undisputed that the subpoenas seek J.W.'s psychotherapy records which were made during the course of his diagnosis and treatment and, therefore, are confidential. Consequently, the information sought by the defendants is privileged and not subject to disclosure, absent a waiver by J.W.. FED. R. EVID. 501; *Jaffee v. Redmond*, 518 U.S. 1 (1996).

The court in *Jaffee* recognized that "[l]ike other testimonial privileges, the patient may of course waive the protection." 518 U.S. at 15, fn 14. The defendants argue that J.W. has waived the privilege and placed his mental health at issue by seeking damages for mental anguish and emotional distress. As will be more fully explained, application of federal law in the circumstances of this case leads the court to the conclusion that the plaintiff has impliedly waived the privilege by putting J.W.'s mental health at issue.[2]

The plaintiff alleges that as a result of Doss's conduct towards him, J.W. has suffered permanent injuries, required mental health treatment, undergone mental health counseling,

---

[2] Alabama law is to the contrary. *See Ex parte Western Mental Health Ctr.*, 884 So. 2d 835 (2003).

4

and suffered "severe emotional distress." *See* Pl's Compl. at ¶¶ 17, 27-28, 29-30. The plaintiff alleges intentional and negligent infliction of emotional distress and mental anguish. She seeks compensatory and punitive damages from the defendants. Clearly, the plaintiff has placed J.W.'s mental state in issue in this case.

Although the Eleventh Circuit has not addressed the issue of waiver with respect to psychotherapy records, other federal courts to consider the question have concluded that the privilege is impliedly waived when a plaintiff places his mental state in issue by seeking damages for mental anguish or emotional distress. *See Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007) (By seeking emotional distress damages, the plaintiff had "put her emotional state at issue in the case" and therefore waived any psychotherapist-patient privilege); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state."); *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) (The plaintiff "place[d] . . . her medical condition at issue" by seeking emotional distress damages and therefore waived the psychotherapist-patient privilege.); *Fisher v. Southwestern Bell Tel.Co.*, 2010 WL 257305, *3 (10th Cir. 2010) ("Ms. Fisher's request for emotional-distress damages placed her psychological state in issue and entitled [the defendant] to discover her therapy records.").[3]

---

[3]The federal courts are certainly not unanimous on the issue. *See Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007) (A plaintiff waives the psychotherapist-patient privilege only when he has "bas[ed] his claim upon the psychotherapist's communications with him" or "selectively disclos[ed] part of a privileged communication in order to gain an advantage in litigation."). *See also In re Sims*, 534 F.3d 117 (2d Cir. 2008) (Agreeing with analysis in *Koch*); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D.

5

In *Jaffee*, the Court likened the psychotherapist-patient privilege to other testimonial privileges. "Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'" *Jaffee*, 518 U.S. at 10. Because the Eleventh Circuit has not decided the issue of implied waiver of the psychotherapist-patient privilege, the court looks to analogous privileges. The attorney-client privilege, like the psychotherapist-patient privilege, is intended to "encourage full and frank communication," and serves the public interest by protecting those communications. *See Jaffee*, 518 U.S. at 10-11. However, the Eleventh Circuit has long recognized the implied waiver of the attorney-client privilege in certain circumstances.[4]

> The attorney-client privilege "belongs solely to the client," and the client may waive it, either expressly or by implication." *In re Von Bulow*, 828 F.2d 94, 100, 101 (2d Cir. 1987). We have observed that the doctrine of waiver by implication reflects the position that the attorney-client provilege "'was intended as a shield, not a sword.'" *GAB Business Services, Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987) (applying Florida law) (quoting *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D. Fla. 1980)). In other words, "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); *accord United States v. Jones*, 696 F.2d

---

Mass. 1997) (No implied waiver unless mental health expert is called as witness.).

[4]*United States v. Almeida*, 341 F.3d 1318, 1326 (11th Cir. 2003)recognizes that implied waivers are subject to criticism because of the risk of eroding public confidence that communications will remain confidential. *See also* Deirdre M. Smith, *An Uncertain Privilege: Implied Waiver and the Evisceration of the Psychotherapist-Patient Privilege in Federal Courts*, 58 DEPAUL L.REV. 79 (2008). In *Almeida* the court characterizes the rule which causes the privilege to give way when a litigant puts privileged information at issue as an "exception" to the privilege. *Id.* In other words, as a consequence of the nature of our adversarial system, an exception to the privilege exists when a litigant puts in issue the privileged information.

10369, 1072 (4th Cir. 1982) ("Selective disclosure for tactical purposes waives the privilege.")

*Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994).

The court concludes that the same analysis should apply to questions of implied waiver of the psychotherapy privilege established in *Jaffee*. The plaintiff has clearly put J.W.'s mental health in issue by contending that he suffered "severe emotional distress" and by seeking damages for emotional and mental distress.

> The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information *would be manifestly unfair* to the opposing party.

*Cox*, 17 F.3d at 1417 (emphasis in original).

Because J.W. has affirmatively placed his mental health at issue, the court concludes that the privilege which protects disclosure of his psychotherapy records has been waived.[5] That is not to say, however, that the court should not protect that information. Consequently, the court will enter a protective order with respect to J.W.'s mental health treatment records.

Also pending before the court is the defendants' motion for a protective order (doc. # 39), seeking the production of Doss's treatment records from mental health professionals made during the course of his treatment. The information sought by the defendants is also

---

[5] The plaintiff relies on *Hicks v. Talbott Recovery Sys., Inc.*, 196 F.3d 1226 (11th Cir. 1999) to assert that J.W. has not waived the privilege. In *Hicks*, the issue of waiver was governed by Georgia law which is inapposite in this case. Under Georgia law, a plaintiff does not waive the psychotherapy privilege "*even though* the patient's 'care and treatment or the nature and extent of his injuries (have been put at issue in any civil or criminal proceeding.'" *Hicks*, 196 F.3d at 1237.

privileged and not subject to disclosure, absent a waiver by Doss. The defendants do not argue that Doss has waived his privilege. Consequently, the court concludes that the mental health information the defendants seek from Doss is protected by the psychotherapist-patient privilege.

## CONCLUSION

Accordingly, upon consideration of the motions, for the reasons as stated, and for good cause, it is

ORDERED that the motion to quash (doc. # 25) and the motion for a protective order (doc. # 39) be and are hereby DENIED. It is further

ORDERED that the motion for a protective order (doc. # 25) be and is hereby GRANTED as follows:

1. This Protective Order shall govern J.W.'s mental health treatment records including all documents and things, produced by the parties in this action which shall be designated as confidential. Furthermore, this Protective Order shall govern all information derived from such documents as well as all copies, excerpts or summaries thereof.

2. The purpose of this Protective Order is to protect against the unnecessary disclosure of information designated as confidential. Such information includes all records, documents, and information from the following medical providers as they relate to J.W.'s psychotherapy, diagnoses, and treatment: (i) Child Protect; (ii) Standing Together Against Rape (STAR); (iii) Dr. John M. Moody; (iv) Dr. Mont Frederick Highley; (v) Alabama Psychiatric Services; and (vi) Jackson Hospital.

3.      Documents and things intended as protected under this Order shall be conspicuously stamped "CONFIDENTIAL." The designation of any document or thing as "CONFIDENTIAL" is subject to challenge.

4.      The information and documents protected by this Protective Order shall be referred to hereinafter as "confidential materials." The restrictions contained herein regarding disclosure of confidential materials also apply with equal force to any excerpts, analyses, or summaries of such items or the information contained therein, as well as to any pleadings, memoranda, briefs, exhibits, transcripts, or other documents that may be prepared in connection with this litigation which contain or refer to the confidential materials or information contained therein.

5.      "Disclosure" or "to disclose" shall mean to divulge, reveal, describe, summarize, paraphrase, quote, transmit, or otherwise provide or communicate to any person or entity the confidential materials, whether pursuant to request, interrogatory, process or otherwise, and whether in accordance with the Federal Rules of Civil Procedure or otherwise.

6.      Such confidential documents shall be used solely for the purpose of this action, shall not be used for any other purpose, and shall not be disclosed to any other person or third party other than:

    a.      Counsel for the parties in this action, including employees of such counsel to the extent necessary to render professional services in the above-referenced proceeding;

    b.      The parties in the above-styled action;

      c.      The Court and persons employed by the Court working on this litigation;

      d.      Court reporters at the proceedings in this action; and

      e.      Experts or consultants retained or consulted by the parties in connection with this litigation, but only as set out in paragraph 7 below;

7.      Prior to making such disclosure of any confidential documents or information pursuant to paragraph 6, counsel making such disclosure shall inform any person to whom disclosure is being made that the information or documents, or any portions thereof, may be used only for the purposes set forth in this Protective Order.

8.      This Protective Order does not limit the right of any party to object to the scope of discovery or to any particular discovery request in this litigation.

9.      Upon request by the producing party, within 30 (thirty) days of the conclusion of this matter as to all parties, confidential materials produced by the producing party, as well as all copies, excerpts or summaries thereof, shall be returned to the producing party.

10.      Nothing in this Order shall prevent a party from any use of its own confidential documents.  Moreover, nothing in this Protective Order shall limit the right of the parties from using confidential materials for purposes of this litigation, including in any pleadings, memoranda, briefs, exhibits, or other documents which may be prepared in connection with this litigation.  In the event any confidential material is included in any paper filed with the Court, such paper shall be filed under seal, except as otherwise provided by the Court, or as otherwise agreed to by the parties in writing.

11.      The inadvertent or unintentional disclosure of any confidential information

shall not be construed to be a waiver, in whole or part, of any party's claim of confidentiality, either as to the specific confidential information disclosed or as to other related information.

12. Any party may apply to the Court for relief from this Protective Order. The party seeking relief from this Protective Order shall specify which information designated as "confidential" by the opposing party it wishes to disclose outside the confines of this litigation and the purpose for which and the manner in which it seeks to disclose the information. Neither party shall disclose any information designated as "confidential" by an opposing party without the written consent of the opposing parties or the express permission of the Court.

13. Before seeking relief from the Court due to an alleged violation of this Protective Order, the party seeking relief will attempt to resolve the matter by agreement with the other party.

14. The terms of this Protective Order are subject to modification, extension, or limitation as may be hereinafter agreed to by all parties, or by order of the Court.

Done this 28TH day of April, 2010.

                                  /s/Charles S. Coody
                                CHARLES S. COODY
                                UNITED STATES MAGISTRATE JUDGE